# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br>Ishwanzya Rivers<br>*Defendant(s)* | Case No. 1:25-mj-00645 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __various dates in 2016-2022__ in the county of __Hamilton__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 38 U.S.C. § 6101 | misappropriation by fiduciaries |
| 18 U.S.C. § 1001 | false statements |

This criminal complaint is based on these facts:
see attached affidavit

☑ Continued on the attached sheet.

JEFFREY MASLAR
Digitally signed by JEFFREY MASLAR
Date: 2025.08.11 12:49:18 -04'00'

*Complainant's signature*

Special Agent Jeff Maslar, OIG, Dept. of Veterans Affairs
*Printed name and title*

Sworn to before me and signed in my presence. **via reliable electronic means, specifically, FaceTime video conference**

Date: **Aug 11, 2025**

*Stephanie K. Bowman*
*Judge's signature*

City and state: Cincinnati, Ohio    Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES<br>v.<br>ISHWANZYA RIVERS | Case No. **1:25-mj-00645**<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeff Maslar, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered to conduct investigations of and to make arrests for offenses enumerated in the United States Code. I am a Special Agent (SA) employed by the Department of Veterans Affairs (VA), Office of Inspector General (OIG), Criminal Investigations Division (CID), assigned to the Cleveland Resident Agency. I have been so employed since May of 2011. Prior to VA OIG CID, I was employed as a Special Agent with the United States Secret Service since 2002. During my tenure as a federal law enforcement officer, I have investigated a range of state and federal criminal violations, including those involving white-collar crime, violent crime, and crimes against children. Since 2001, I have received training and have experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, and various other crimes and investigation techniques.

2. I am familiar with the facts and circumstances of this case. The information

contained in this affidavit is either personally known to me, based upon my interview of various witnesses and review of various records and publicly available information, or has been relayed to me by other agents or sworn law enforcement personnel. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning the investigation. I have set forth only those facts that I believe are necessary to establish probable cause to support the requested complaint and arrest warrant.

3. There is probable cause to believe that ISHWANZYA RIVERS violated 38 U.S.C. § 6101 (misappropriation by fiduciaries) and 18 U.S.C. § 1001 (false statements).

**PROBABLE CAUSE**

4. In summary, RIVERS misappropriated money that she was managing on behalf of four United States military veterans. She misappropriated most of this money from a veteran named "B.D.," but she also misappropriated smaller amounts from three other veterans.

*Victim: "B.D."*

5. B.D. was a Marine Corps veteran who received benefits from the U.S. Department of Veterans Affairs (VA) for service-connected disabilities. He was living at a VA facility in Cincinnati.

6. On February 9, 2015, RIVERS became B.D.'s fiduciary to manage his VA benefits. She signed a fiduciary agreement in which she agreed to use the VA money for B.D.'s benefit. She acknowledged that she could not "borrow, loan, or gift funds belonging to the beneficiary." She acknowledged that B.D.'s money could not be commingled with anyone else's money. The fiduciary agreement was countersigned on behalf of the VA by

2

"Employee-1," who was a friend of RIVERS and a VA employee.[1]

7. RIVERS opened account xxx0172 at JPMorgan Chase Bank, N.A. in the name of "[B.D.] by Ishwanzya Rivers Rep Payee." She opened this account at a branch in Kenwood (Sycamore Township), Ohio. B.D.'s VA benefit was deposited each month, and RIVERS paid some bills on his behalf. By September 2016, the balance in the account reached about $26,000.

8. RIVERS began misappropriating money from B.D. on September 27, 2016, when she transferred $1,500 directly from B.D.'s bank account to her own account (no. xxx2532) at JPMorgan Chase. RIVERS's own account balance had dropped to $46.90, and the money that she misappropriated from B.D. provided an immediate infusion into her account. After this $1,500 theft, RIVERS made four more transfers from B.D.'s account to her own account in late 2016 and early 2017, for a total of $4,000 misappropriated. She also improperly transferred $1,500 from B.D.'s account to another veteran's account, for a total of $5,500 misappropriated from B.D.'s account. She returned $2,000 to B.D.'s account in May 2017, meaning that B.D.'s account was still $3,500 short. Thus, when RIVERS had to complete an accounting of B.D.'s finances for the VA in February 2018, she transferred $3,500 back into his account so it would have the correct balance. To cover this up, RIVERS sent a letter to the VA falsely claiming that all of these transfers were due to a bank error.

9. In November 2018, the VA opened an administrative investigation of RIVERS because she was delinquent in completing some required accountings of B.D.'s money.

10. In January 2019, the VA informed RIVERS that she had been replaced as B.D.'s fiduciary. By this point, B.D. had over $130,000 in his account at JPMorgan Chase. The VA

---

[1] Employee-1 was fired from the VA in December 2024.

directed RIVERS to forward this money to the new fiduciary. She failed to do so. The money remained in the JPMorgan Chase account for several years until RIVERS misappropriated it, as discussed below in paragraph 17.

11. The new fiduciary was an unrelated company named He Paid It All, LLC. This company managed B.D.'s monthly benefits for the next couple years.

12. VA records reflect a note dated May 6, 2021 stating that B.D. wanted to switch his fiduciary from He Paid It All, LLC to an entity called PHD Payee. This note was electronically signed by Employee-1, the VA employee who was a friend of RIVERS. It is highly questionable whether B.D. actually made this request, and whether he even had the mental capacity to make such a request. At the time, B.D. was 85 years old and was unable to manage his financial affairs, which is why his benefits were managed by a fiduciary. PHD Payee, LLC was an entity that RIVERS had registered with the Ohio Secretary of State in December 2018, right after the VA notified her that she was under administrative investigation, as mentioned above.

13. On May 28, 2021, RIVERS's friend, Employee-1, performed the VA's examination of RIVERS's new company, PHD Payee, LLC to be B.D.'s new fiduciary.

14. Also on May 28, 2021, a new fiduciary agreement was electronically signed for B.D. by PHD Payee Services. The agreement was countersigned on behalf of the VA by RIVERS's friend, Employee-1. This effectively put RIVERS back in control of B.D.'s money.

15. RIVERS opened a new bank account at North Side Bank to manage B.D.'s money. She opened the account at a branch in Blue Ash, Ohio. The account was opened in the name of "[B.D.] by PHD Payee, LLC, VA Fiduciary."

16. RIVERS misappropriated $2,400 from B.D. by writing herself six checks of $400 each from the new North Side Bank account from August 2021 through January 2022 and depositing these checks into her own checking account.

17. Once RIVERS was re-appointed as B.D.'s fiduciary in 2021 (using her new company, PHD Payee), she also rapidly emptied the money in B.D.'s old JPMorgan Chase account. As stated above, this account still had over $130,000 in it from when RIVERS was previously B.D.'s fiduciary from 2015 to 2019. In total, the JPMorgan Chase records reflect that RIVERS misappropriated B.D.'s money from this account 45 times from June 18, 2021 through November 16, 2022, totaling approximately $133,133.81. Specifically:

    (a) RIVERS made 22 transfers totaling $57,675 from B.D.'s bank account to her own bank account. She then spent this money on shopping, restaurants, travel, bill payments, and other personal expenditures.

    (b) She made seven payments from B.D.'s bank account to her own Chase credit card, totaling $39,625.92. The credit card records reflect that she used this card for shopping, restaurants, and travel to Montego Bay, Cancun, London, Panama, Zurich, Vienna, and Maldives.

    (c) She made six payments from B.D.'s bank account to her own Apple Card account, totaling $23,668.37. The Apple Card records reflect that RIVERS used this card for shopping, restaurants, and plane tickets.

    (d) She made seven payments from B.D.'s bank account to her own Citi credit card account, totaling $7,304.67. The Citi records reflect that she used this card for travel, restaurants, shopping, and subscriptions to Netflix, Hulu, and Amazon Prime video.

    (e) She made two payments from B.D.'s account to her own Capital One credit card, totaling $3,779.62. Capital One records reflect that she used this card at hotels, liquor stores, and a car dealership, among other things.

    (f) She made one rental payment of $1,080.23 to her apartment complex.

18. In the middle of RIVERS's spending spree with B.D.'s money, B.D. died in March 2022 in Cincinnati.

19. On May 5, 2022, RIVERS completed a final accounting of B.D.'s finances for the VA. She made two false statements. First, she falsely stated that B.D. had $0.00 at the beginning of the reporting period (June 2, 2021). By listing $0.00, RIVERS conspicuously omitted the approximately $130,000 that was still sitting in B.D.'s old account at Chase, which RIVERS was rapidly misappropriating as described above. Second, RIVERS falsely claimed that she had given B.D. $2,400 for his personal use during the reporting period. In reality, RIVERS misappropriated this $2,400 by writing herself six checks of $400 each and depositing them into her own bank account, as described above in paragraph 16.

20. Within nine months of B.D.'s death, RIVERS had emptied the JPMorgan Chase account. The last time RIVERS misappropriated money from B.D.'s JPMorgan Chase account was on November 16, 2022, when she transferred $125 to her own checking account. RIVERS's own bank records reflect that she used this money to help fund a trip to Las Vegas.

### *Victim: "D.P."*

21. "D.P." was an Air Force veteran who received compensation for service-connected disabilities.

22. On September 3, 2015, RIVERS became D.P.'s fiduciary to manage his VA benefits. She signed a fiduciary agreement in which she agreed to use the VA money for D.P.'s benefit. She acknowledged that she could not "borrow, loan, or gift funds belonging to the beneficiary." She acknowledged that D.P.'s money could not be commingled with anyone else's money. RIVERS's fiduciary agreement was countersigned on behalf of the VA by her friend, Employee-1.

23. On December 4, 2015, RIVERS opened an account at JPMorgan Chase Bank in the

name of "[D.P.] by Ishwanzya D. Rivers Rep Payee." She opened the account at a branch in Evendale, Ohio.

24. On January 29, 2018, RIVERS obtained a $3,500 cashier's check drawn on D.P.'s JPMorgan Chase account. Although the check was payable to D.P., RIVERS endorsed the back of the check and deposited it into her own account. Two days later, she transferred this money into veteran B.D.'s account to replace some money she had previously misappropriated from B.D., as described above in paragraph 8.

25. In November 2018, RIVERS had to complete an accounting of D.P.'s finances with the VA. To cover up for the $3,500 that she misappropriated from D.P.'s account in January, she falsely claimed that this money was for "home repairs." She reiterated this lie in a December 15, 2018 letter to the VA.

26. On February 22, 2019, the VA launched an administrative investigation into RIVERS for failing to provide the required accountings of how she was handling D.P.'s money. Shortly thereafter, on March 20, 2019, RIVERS simply had the VA appoint her company, PHD Payee, LLC, as the new fiduciary for D.P. In this manner, RIVERS continued to manage D.P.'s money. The new fiduciary agreement was countersigned on behalf of the VA by RIVERS's friend, Employee-1.

27. The bank records reflect that RIVERS obtained five more cashier's checks payable to D.P., she endorsed each check with her own signature on the back, and she deposited each check into her own account. The dates and amounts of the checks were:

        7/17/2019    $2,000
        12/23/2019  $1,000
        9/21/2020    $2,000

        5/17/2021    $2,500

        7/15/2022    $3,000.

She used this money on shopping, restaurants, bill payments, travel to New Orleans, and other personal expenditures.

28. On October 14, 2022, the VA notified PHD Payee, LLC that it was being replaced as D.P.'s fiduciary.

### Victim: "H.T."

29. "H.T." was an Army veteran who received compensation for service-connected disabilities.

30. On November 19, 2015, RIVERS became H.T.'s fiduciary to manage his VA benefits. She signed a fiduciary agreement in which she agreed to use the VA money for H.T.'s benefit. She acknowledged that she could not "borrow, loan, or gift funds belonging to the beneficiary." She acknowledged that H.T.'s money could not be commingled with anyone else's money. RIVERS's fiduciary agreement was countersigned on behalf of the VA by Employee-1, who was RIVERS's friend.

31. On February 9, 2016, RIVERS opened an account at JPMorgan Chase Bank in the name of "[H.T.] by Ishwanzya D. Rivers Rep Payee." She opened the account at a branch in Evendale, Ohio.

32. On September 18, 2018, RIVERS obtained a $200 cashier's check drawn on H.T.'s JPMorgan Chase account. Although the check was payable to H.T., RIVERS endorsed the back of the check and deposited it into her own account.

33. Similarly, on July 17, 2019, RIVERS obtained a $500 cashier's check drawn on H.T.'s JPMorgan Chase account. Although the check was payable to H.T., RIVERS endorsed the

8

back of the check and deposited it into her own account.

34. On September 23, 2019, RIVERS had the VA appoint her company, PHD Payee, LLC, as the new fiduciary for H.T. In this manner, RIVERS continued to manage H.T.'s money. The new fiduciary agreement was countersigned on behalf of the VA by Employee-1, who was RIVERS's friend.

35. The bank records reflect that RIVERS obtained two more cashier's checks payable to H.T., she endorsed each check with her own signature on the back, and she deposited each check into her own account. The dates and amounts of the checks were:

```
12/23/2019    $  300
8/29/2020     $1,000.
```

36. RIVERS also wrote a personal check from H.T.'s account to herself on March 27, 2020, in the amount of $3,065. She endorsed the back of the check and deposited it into her own account at an ATM in Cincinnati.

37. In total, RIVERS misappropriated $5,065 from H.T. in this manner. She used this money on shopping, restaurants, bill payments, and other personal expenditures.

38. On August 31, 2022, the VA notified PHD Payee, LLC that it was being replaced as H.T.'s fiduciary.

### *Victim: "J.L."*

39. "J.L." was an Army veteran who received a pension for his service.

40. On July 10, 2017, RIVERS became J.L.'s fiduciary to manage his VA benefits. She signed a fiduciary agreement in which she agreed to use the VA money for J.L.'s benefit. She acknowledged that she could not "borrow, loan, or gift funds belonging to the beneficiary." She

acknowledged that J.L.'s money could not be commingled with anyone else's money. RIVERS's fiduciary agreement was countersigned on behalf of the VA by Employee-1, who was RIVERS's friend.

41. On March 23, 2020, RIVERS was replaced as J.L.'s fiduciary by RIVERS's own entity, PHD Payee. The new fiduciary agreement was countersigned on behalf of the VA by Employee-1, who was RIVERS's friend.

42. RIVERS, on behalf of PHD Payee, then opened a new bank account (no. xxx9543) at North Side Bank at a branch in Blue Ash, Ohio.

43. On four occasions, RIVERS wrote herself checks from J.L.'s account:

    4/14/2021    $1,400
    5/22/2021    $1,000
    6/2/2021     $1,000
    6/13/2021    $1,000.

44. RIVERS deposited each check into her own bank account. She used this money on shopping, restaurants, bill payments, and other personal expenditures.

45. On September 13, 2022, the VA notified PHD Payee, LLC that it was being replaced as J.L.'s fiduciary.

### *Interview of RIVERS*

46. This matter was ultimately referred to the VA's Office of Inspector General. On January 27, 2025, another investigator and I interviewed RIVERS at her office in Louisville, Kentucky. The interview lasted about 20 minutes. It was video and audio recorded. RIVERS acknowledged that she was friends with Employee-1. I stated that about $131,000 was taken from B.D.'s JPMorgan Chase account and placed into RIVERS's accounts. I asked if that

sounded familiar, and she said, "it does not, but you're telling me it is." I detailed approximately how much money she transferred from B.D.'s account into her own bank account and her credit cards. RIVERS acknowledged that she had an account ending in 2532 at JPMorgan Chase and she acknowledged that she used to have a JPMC credit card. Otherwise, she generally remained silent as I detailed her theft from B.D. Later in the conversation, the other investigator asked what could possibly have justified RIVERS taking the money from B.D. RIVERS said she would not answer that question. She then asked us to leave, which we did.

## CONCLUSION

47. Based on the foregoing, I request that the Court issue the proposed complaint and arrest warrant.

## REQUEST FOR SEALING

48. I further request that the Court order that all papers associated with this criminal complaint, including this affidavit, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is not public. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
JEFFREY MASLAR
Digitally signed by JEFFREY MASLAR
Date: 2025.08.11 12:51:06 -04'00'

Jeff Maslar
Special Agent
Office of Inspector General
U.S. Department of Veterans Affairs

Subscribed and sworn to before me by reliable electronic means, specifically, FaceTime video conference, in accordance with Fed. R. Crim. P. 4.1, on August __11__, 2025.

_____
HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE